NORMAN LURIER *v.* THE DANBURY BUS CORPORATION ET AL.

WYNNE, C. J., BALDWIN, DALY, KING and SHAPIRO, Js.

Argued October 3—decided October 23, 1957

*Paul V. McNamara,* with whom was *Louis A. De-Fabritis,* for the appellant (plaintiff).

*Irwin E. Friedman,* with whom, on the brief, was *Arthur Levy, Jr.,* for the appellees (defendants).

KING, J. This is an action to recover damages for personal injuries claimed to have been sustained as the result of a collision between the plaintiff's automobile and the named defendant's bus. Although both the operator and the owner of the bus were made parties defendant, the operator alone will be referred to as the defendant since the issue of agency was conceded. The court directed a verdict for the defendant and thereafter denied the plaintiff's motion to set it aside. The plaintiff has appealed.

The power of a trial court to direct a verdict is necessarily sharply circumscribed. "[L]itigants have a constitutional right to have issues of fact decided by the jury and not by the court." *Ardoline* v. *Keegan,* 140 Conn. 552, 555, 102 A.2d 352. The direction of a verdict is not favored since the "same end can be reached by setting aside the verdict after the plaintiff has been accorded a full trial of his cause. The fact that the directed verdict may, by the large expense entailed in printing the evidence, result in the inability of the defeated litigant to have the directed verdict reviewed, should make the trial judge especially careful to be sure of this issue before directing a verdict, and if any question remains in his mind as to the ruling, he ought to deny the motion to direct. Subsequently, upon the motion to set aside the verdict, he can examine the evidence in the light of our law with deliberation and reflection and arrive at his conclusion apart from the haste and pressure of the court-room." *Ulrich* v. *New York, N.H. & H.R. Co.,* 98 Conn. 567, 570, 119 A. 890; *Greenley* v. *Miller's, Inc.,* 111 Conn. 584, 588, 150 A. 500. This rule still applies even though, under Practice Book § 448, a narrative statement of the evidence is now used, as it was in this case, in lieu of the printing of the transcript,

and even though, under Practice Book § 234, a decision on a motion for a directed verdict may now be reserved until after a verdict has been rendered.

In the exceptional case, however, a verdict may properly be directed. Our rule as to the direction of a verdict has remained unchanged although it has not always been expressed in identical phraseology. It is clearly and tersely stated in *Mott* v. *Hillman,* 133 Conn. 552, 555, 52 A.2d 861, as follows: "While the direction of a verdict is not favored, it is justified if upon the evidence the jury could not reasonably and legally have reached any other conclusion than that embodied in the verdict as rendered; *Bernardo* v. *Hoffman,* 109 Conn. 158, 159, 145 A. 884; and if, had the verdict been rendered for the other party, the evidence was so weak that it would be proper for the court to set it aside. *Currie* v. *Consolidated Ry. Co.,* 81 Conn. 383, 388, 71 A. 356." It remains to apply this rule to the evidence in this case, "considered in that aspect most favorable to the plaintiff." *Morris* v. *King Cole Stores, Inc.,* 132 Conn. 489, 491, 45 A.2d 710, citing *Lesser* v. *Bridgeport-City Trust Co.,* 124 Conn. 59, 61, 198 A. 252, and *Sedita* v. *Steinberg,* 105 Conn. 1, 5, 134 A. 243.

If the evidence is so considered, the jury might have found the following facts. At about 9:15 in the evening of February 14, 1953, the defendant's common carrier motor bus was proceeding easterly towards Danbury on the trunk-line highway running from Danbury to Ridgefield. Prior to the collision between the plaintiff's car and the bus, a third car, never identified, had been proceeding easterly in front of the bus for a distance of two to four miles. The defendant, noticing that this car was proceeding in an erratic and peculiar manner as to speed and direction, assumed that its operator was

either intoxicated or inattentive. As a consequence the defendant was afraid to pass the car and decided that the safe course for himself and his passengers was to drop back about twelve car lengths. Thereafter he maintained a distance of six to twelve car lengths between the bus and the erratic car, although just before the accident this distance was reduced to between thirty and forty feet. While the bus was staying behind the erratic car, another car overtook the bus and thereafter was between the bus and the erratic car. As the latter reached a point at or near a curve in the road, the lights of the plaintiff's car, which was approaching from the east toward the bus, were seen by the defendant. The erratic car forced the plaintiff's car to veer to its right, strike the fence, and then turn sharply to its left directly in front of the bus. The collision occurred when the plaintiff's car was broadside across the eastbound lane. After the collision, it was headed south, with its front wheels on the south shoulder and its rear end about four feet south of the center line, blocking the eastbound lane. The bus, entirely on its own side of the road, was on a slight diagonal with the center line, and its left front was six or seven feet south of that line. The road was dry. The plaintiff's injuries were such that he remembered nothing of the details of the accident. The defendant was operating the bus at a speed of about twenty-five miles an hour and did not apply his brakes before the impact.

The plaintiff claimed that the defendant was negligent in failing to keep farther to the rear of the erratic car, in operating at too high a speed, in failing to maintain a proper lookout and to apply his brakes, and in not sooner stopping the bus.

There was no evidence that the plaintiff's car

started its course onto the defendant's side of the road in time for the defendant to have thereafter done anything to avoid the collision, nor do we understand the plaintiff so to claim. *Szabados* v. *Chatlos*, 119 Conn. 537, 541, 177 A. 719; *Kenyon* v. *Walter H. Goodrich & Co.*, 120 Conn. 482, 483, 181 A. 390. And he expressly, and quite properly, disclaimed any reliance on the last clear chance doctrine.

The claims of the plaintiff were that the movements of the erratic car forced him so to operate his car as to hit the fence on his own side of the road, that this in turn caused him to lose control of the car, and that this in turn caused it to swing broadside directly in front of the bus.

There were no specifications of statutory negligence. See Practice Book, Form No. 167. To find negligence in any of the respects alleged, the jury would have had to find a breach of duty on the part of the bus operator, and this in turn would depend on whether they could reasonably find that the ordinary man in the position of the defendant, knowing what he knew or should have known, would have anticipated that harm of the general nature of that suffered was likely to result from his conduct in any of the respects alleged to have constituted negligence. *Figlar* v. *Gordon,* 133 Conn. 577, 582, 53 A.2d 645. The jury could not reasonably have so found.

This disposes of the appeal and makes unnecessary a consideration of the issue of proximate cause, on which the plaintiff had the burden of proof. We point out, however, that according to the plaintiff's claims, the negligence of the defendant antedated the start of the course of the plaintiff's car across the highway. Under these circumstances, for the plaintiff to prevail on the issue of proximate cause,

the jury would have had to find that any negligence of the defendant in any of the respects claimed was a proximate cause notwithstanding the foregoing claimed chain of causation flowing from the negligent operation of the erratic car, under the rule of cases such as *Corey* v. *Phillips,* 126 Conn. 246, 255, 10 A.2d 370, and *Ferino* v. *Palmer,* 133 Conn. 463, 467, 469, 52 A.2d 433.

There is no error.

In this opinion the other judges concurred.